**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Whaleco Incorporated, | No. CV-23-02549-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Muhammad Arslan, et al., | |
| Defendants. | |

Plaintiff Whaleco Incorporated operates an e-commerce platform called TEMU, which launched in the United States in September 2022 using the TEMU name and trademark, including a distinctive orange logo ("TEMU Marks"). Whaleco alleges that a host of websites are infringing the TEMU Marks, and has sued the infringing websites *in rem*, and the owners of these websites (the identities of all but one of whom are, at this point, unknown), under federal and state trademark laws. At issue is Whaleco Incorporated's *ex parte* motion for a temporary restraining order ("TRO") and for an order authorizing alternative service. (Doc. 10.) Having considered the motion, Whaleco's supplement thereto (Doc. 16), its First Amended Verified Complaint (Doc. 8), and its arguments during the telephonic *ex parte* hearing, the Court grants Whaleco's motion in part.

A TRO preserves the status quo pending a hearing on a preliminary injunction motion to avoid irreparable harm in the interim. *See Ariz. Recovery Housing Ass'n v. Ariz.*

*Dep't of Health Servs.*, No. CV-20-00893-PHX-JAT, 2020 WL 8996590, at *1 (D. Ariz. May 14, 2020). The standards for issuing a TRO are identical to those for issuing a preliminary injunction. *Whitman v. Hawaiian Tug & Barge Corp./Young Bros., Ltd. Salaried Pension Plan*, 27 F. Supp. 2d 1225, 1228 (D. Haw. 1998). A plaintiff seeking a TRO must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of immediate relief, that the balance of equities tips in its favor, and that a TRO is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). These elements are balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another, although all elements still must be met. *See Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131, 1134-35 (9th Cir. 2011). The movant bears the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

A party seeking an *ex parte* TRO also must comply with Federal Rule of Civil Procedure 65(b)(1) by (1) substantiating its allegations of irreparable harm with an affidavit or verified complaint and (2) certifying in writing any efforts made to give notice to the non-moving parties, and why notice should not be required. Further, the Court may issue a TRO only if the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). A TRO expires no later than 14 days after issuance, although the Court may extend its duration for good cause. Fed. R. Civ. P. 65(b)(2).

Whaleco has satisfied Rule 65(b)(1) by substantiating its allegations of irreparable reputational harm via its First Amended Verified Complaint (Doc. 8), and by explaining in a declaration submitted by counsel the efforts it has made to identify and serve the owners of the allegedly infringing websites and why, considering the failure of those efforts, notice to Defendants would be impracticable or counterproductive (Doc. 10-1).

Whaleco is likely to succeed on the merits of its trademark infringement and unfair competition claims under 15 U.S.C. §§ 1114, 1125, and Arizona common law because

1   Whaleco has demonstrated protectable rights in the TEMU Marks and that Defendants are

2   using marks and domain names likely to cause consumer confusion.

3          Whaleco is likely to succeed on the merits of its counterfeiting claim under 15

4   U.S.C. §§ 1114(1)(b), 1116(d) because it has demonstrated that Defendants have used and

5   continue to use counterfeits of the federally registered TEMU Marks in connection with

6   the advertising of goods or services and pirate websites, which is likely to cause consumer

7   confusion, mistake, or deception.

8          Whaleco is likely to succeed on the merits of its cybersquatting claim under 15

9   U.S.C. § 1125(d)(1)(A) because it has demonstrated that temucouponcode.us,

10  temugifts.com, temudiscount.co, temu.coupons, temuspot.shop, temuhot.store, and

11  temups.com (the "Cybersquatting Domain Names") were registered and used in bad faith;

12  the TEMU Marks were distinctive and famous at the time the Cybersquatting Domain

13  Names were registered; the Cybersquatting Domain Names are identical or confusingly

14  similar to the TEMU Marks; and the Cybersquatting Domain Names are dilutive of the

15  TEMU Marks.

16         Whaleco is likely to succeed on the merits of its trademark dilution claim under 15

17  U.S.C. § 1125(c) and A.R.S. § 44-1448.01 because it has demonstrated that the TEMU

18  Marks are famous and distinctive, that Defendants began using the TEMU Marks in

19  commerce after the TEMU Marks became famous and distinctive, that Defendants acted

20  willfully with intent to trade on Whaleco's reputation and goodwill and to cause dilution

21  of the famous TEMU Marks, and that Defendants' use is likely to dilute the TEMU Marks.

22         Whaleo likely will suffer irreparable reputational harm in the absence of immediate

23  relief. The balance of hardships favors Whaleco because issuance of a TRO will prevent

24  Defendants from profiting off their likely infringement, while failure to issue the TRO

25  likely will cause Whaleco to suffer additional irreparable reputational injury. And the

26  public interest is served by preventing consumer confusion or deception and protecting

27  consumers.

28

Whaleco's proposed TRO, however, goes too far in two respects. First, much of the proposed TRO is directed toward non-party Namecheap Incorporated, the domain name registrar for the websites at issue. "This Court previously has rejected the argument that domain registrars necessarily act in concert or participation with a client who uses a domain to commit intellectual property violations." *Boyko v. Kondratiev*, No. CV-23-01186-PHX-DLR, 2023 WL 5017198, at *4 (D. Ariz. July 14, 2023). *See also Fornix Holdings LLC v. Unknown Party*, No. CV-22-00494-PHX-DLR, 2022 WL 992546, at *2 (D. Ariz. Apr. 1, 2022). Although a domain registrar who receives notice of the TRO cannot thereafter take actions that facilitate an effort by Defendants to evade or violate the TRO, the Court remains convinced that it lacks authority to order a non-party domain registrar to act before it even has notice of the injunction, and before it has been asked by any defendant to facilitate a potential violation of that order. *See Boyko*, 2023 WL 5017198 at *4 ("Plaintiffs do not explain why or how the Court has authority require NameCheap to affirmatively act now merely because it is possible NameCheap could in the future act in a way that facilitates a hypothetical violation of the TRO[.]"). The Court therefore denies Whaleco's motion for a TRO to the extent that it asks the Court to order Namecheap or other non-party domain registrars to act.

Second, portions of Whaleco's proposed TRO would direct Namecheap (or direct Defendants to direct Namecheap) to disclose contact information for the owners of the infringing website at issue. This language circumvents ordinary discovery procedures and instead attempts to use a TRO as a vehicle for obtaining early discovery. The Court understands and appreciates the special difficulties involved in uncovering the identities of defendants in these sorts of cases. But the proper way to address these difficulties is by moving for leave to conduct early discovery, not by asking the Court to essentially order discovery as a term of a TRO.

"As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the

identifying facts necessary to permit service on the defendant." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999). These requests are allowed upon a showing of good cause. *See Semitool, Inc. v. Tokyo Electronic America, Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002). In the internet context, "[s]ervice of process can pose a special dilemma for plaintiffs in cases . . . [where] the tortious activity occurred entirely online." *Columbia Ins.*, 185 F.R.D. at 577. A three-factor test has been developed for instances where courts are considering motions requesting early discovery to assist in the identification of certain defendants. *Id.* at 578-80. The plaintiff must (1) identify the defendants with enough specificity that the Court can determine they are real persons or entities who can be sued, (2) identify all previous steps taken to locate the defendants, and (3) show that the plaintiff's complaint would survive a motion to dismiss. *Id.*

Based on its First Amended Verified Complaint and moving papers, Whaleco satisfies this test. Accordingly, instead of circumventing ordinary discovery procedures by ordering discovery as a term of a TRO, the Court instead will construe this portion of Whaleco's motion as a motion for leave to conduct early discovery, and the Court grants leave to conduct early discovery to obtain the contact information at issue.

Accordingly,

**IT IS ORDERED** that Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them having notice of this order, shall immediately:

1. Place the Cybersquatting Domain Names on registry lock, making the domain names non-transferrable and on registry hold, preventing any websites associated with the domain names from resolving when queried by a browser;

2. Disable access to the following webpages so that they are no longer accessible to internet users:

   a. temucouponcode.us,

   b. temugifts.com,

   c. temudiscount.co,

1          d.   temu.coupons,

2          e.   temuspot.shop,

3          f.   temuhot.store,

4          g.   temups.com,

5          h.   financecomedy.com,

6          i.   https://donefoit.info/us_33357_8925/?fbclid=IwAR2dDPBOwuMbmbh

7               5y8aLHoI-DnZoxJwckAlBX2S5LwMlt8jf-_5LRQsSVRI,

8          j.   breakthewa.com,

9          k.   https://begingifts.club/us_33322_8925/?fbclid=IwAR2-laqqTJ1w-

10              vOmn9DDtD6O3014OIfDVQgJPbVbC34Ws_hOqYYralj45QI,

11          l.   https://bigprizepickdraws.com/x57-claim-it-

12              now/?pub=33&click_id=0c6bd61091d047628df7aa7a2160a19a&c1=&c

13              2=60154qdho37wh9be&c3=&c4=tempall,

14          m.   giftzheaven.cyou/temu,

15          n.   http://65202.yamschool.net/2785222mI7330528pF157403336PL8390ge

16              1dKr192526hT, and

17          o.   https://oukayert.store/hbzzkr.php?1d=1o09657dbf30c5342_20o1.fw3hsf

18              t5.T00zjrfmvtf256f0vk_1y2616.07krmN3N5cnQyZWUyN2E00e2MvS.

19    3.  Cease all use of the TEMU Marks or any reproduction, counterfeit, copy, or

20        colorable imitation of the TEMU Marks on the following webpages and any

21        other webpages that Defendants' control or operate:

22          a.   temucouponcode.us,

23          b.   temugifts.com,

24          c.   temudiscount.co,

25          d.   temu.coupons,

26          e.   temuspot.shop,

27          f.   temuhot.store,

28          g.   temups.com,

        h.  financecomedy.com,

        i.  donefoit.info,

        j.  breakthewa.com,

        k.  begingifts.club,

        l.  bigprizepickdraws.com,

        m. giftzheaven.cyou,

        n.  yamschool.net, and

        o.  oukayert.store.

4.  Administratively lock all webpages identified above and not download the content of the webpages identified above and/or transfer such content to another domain name or hosting service;

**IT IS FURTHER ORDERED** that Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them having notice of this order are enjoined:

1.  From using, registering, or seeking to use or register any name, mark, trade name, company name, domain name, source identifier, or designation comprised of or containing the TEMU mark, logo, or any similar term(s) or design in any manner likely to cause confusion with Whaleco and/or the TEMU Marks or to otherwise injure Whaleco and/or its goodwill and reputation;

5.  From representing, by any means whatsoever, directly or indirectly, that Defendants, their services/goods, and/or their activities originate from, are sponsored by, or are associated, affiliated, or connected with Whaleco in any way;

6.  From engaging in acts that constitute trademark infringement, counterfeiting, dilution, false designation of origin, cybersquatting, or unfair competition that would damage or injure Whaleco's business reputation or damage or dilute the value of the TEMU Marks;

7.  From using, linking, transferring, selling, exercising control over, or otherwise

- 7 -

owning the Cybersquatting Domain Names or any other domain name that incorporates, in whole or in part, any of the TEMU Marks, or any domain name that is used in connection with any infringing website or webpage;

8. From creating, operating, owning, overseeing, or otherwise exercising control over any infringing website, webpage or parked page embedding, incorporating, including, or otherwise displaying the TEMU Marks, or any version of Whaleco's names in promotion, advertising, or pay per click campaigns; and

9. From assisting, aiding, and/or abetting any other person or business entity in engaging in or performing any of the above activities.

**IT IS FURTHER ORDERED** that, to secure this *ex parte* TRO, Whaleco shall deposit with the Clerk of the Court a cash bond of **$1,000** within **7 days**.

**IT IS FURTHER ORDERED** that, within **3 days** of the date of this order, Whaleco shall serve Defendants with a copy of this order, the First Amended Verified Complaint, and all papers filed in support by via the email addresses below:

| Defendant/Domain Name | Email Address(es) |
|---|---|
| Muhammad Arslan/ temucouponcode.us | arslanpfc@gmail.com |
| ABC Corp. 1/John Doe 1/ temugifts.com | Unmasked WHOIS record email - TBD 8a10ad985b3a43f4852d451772af59d0.protect@withheldforprivacy.com |
| ABC Corp. 2/John Doe 2/ temudiscount.co | Unmasked WHOIS email of record - TBD 6e7e6c591472429bb1e5e56fd96bed78.protect@withheldforprivacy.com |
| ABC Corp. 3/John Doe 3/ temu.coupons | Unmasked WHOIS email of record – TBD d9b3dac0a939410989390ab423c9c5a0.protect@withheldforprivacy.com |

| Defendant/Domain Name | Email Address(es) |
|---|---|
| ABC Corp. 4/John Doe 4/ temuspot.shop | Unmasked WHOIS email of record – TBD b9f5a73675b04c66a99f1536c1b51236.protect@withheldforprivacy.com |
| ABC Corp. 5/John Doe 5/ temuhot.store | Unmasked WHOIS email of record – TBD atstoreservice@gmail.com 059f792a02a24f62b46718f2b59b8372.protect@withheldforprivacy.com |
| ABC Corp. 6/John Doe 6/ temups.com | Unmasked WHOIS email of record – TBD temafes.sale@gmail.com support@temafes.net b92184d33f4e4672813fe47c669f4052.protect@withheldforprivacy.com |
| ABC Corp. 7/John Doe 7/ financecomedy.com | Unmasked WHOIS record email - TBD 0ecd92dff54246859a3e0867519dd9c0.protect@withheldforprivacy.com |
| ABC Corp. 8/John Doe 8/ donefoit.info | Unmasked WHOIS email of record - TBD b01c69808eb54e77b308caa642280bb8.protect@withheldforprivacy.com |
| ABC Corp. 9/John Doe 9/ breakthewa.com | Unmasked WHOIS email of record - TBD 98301f85804744dbb2e1d63ed339631c.protect@withheldforprivacy.com |
| ABC Corp. 10/John Doe 10/ begingifts.club | Unmasked WHOIS email of record - TBD ce47a1f3fb0e49a182b6d777f6c732f3.protect@withheldforprivacy.com |
| ABC Corp. 11/John Doe | Unmasked WHOIS email of record - TBD |

| Defendant/Domain Name | Email Address(es) |
|---|---|
| 11/ bigprizepickdraws.com | a40bb833d3194c9e9ff7c98eb42df7b5.protect@withheldforprivacy.com |
| ABC Corp. 12/John Doe 12/ giftzheaven.cyou | Unmasked WHOIS email of record -TBD 693f9f49494745a7a28cded169485f61.protect@withheldforprivacy.com |
| ABC Corp. 13/John Doe 13/ yamschool.net | Unmasked WHOIS email of record – TBD f05ad7fd1aad4f47b26c1fe4f0bb8096.protect@withheldforprivacy.com |
| ABC Corp. 14/John Doe 14/ oukayert.store | Unmasked WHOIS email of record – TBD 589f57d2a92f4902b92dccb5e4133c0a.protect@withheldforprivacy.com |

**IT IS FURTHER ORDERED** that Whaleco may conduct early discovery to obtain from Namecheap and any other domain name registrars, domain name registries or their administrators, and/or website hosting service providers offering services to Defendants the identities and all known contact information of the operators and/or owners of the Cybersquatting Domain Names and the infringing websites identified in this order.

**IT IS FURTHER ORDERED** that Whaleco's *ex parte* motion for a TRO (Doc. 10) is converted into a motion for a preliminary injunction. Defendants shall respond to the preliminary injunction motion by no later than **February 16, 2024**. Whaleco may file an optional reply by no later than **February 23, 2024**. The parties shall appear for a preliminary injunction hearing before Judge Douglas L. Rayes in Courtroom 606, 401 W. Washington St., Phoenix, AZ 85003 on **February 27, 2024, at 10:00 AM.** By no later than **February 20, 2024**, the parties shall jointly notify the Court in writing whether this hearing will be an evidentiary hearing or an oral argument on the paper record only.

1    **IT IS FURTHER ORDERED** that, to afford the parties adequate time to brief the

2    issues and for the Court to hold a hearing, the Court finds good cause to extend the duration

3    of this TRO beyond the ordinary 14 days. Unless otherwise extended, this TRO will expire

4    on **March 1, 2024**.

5    Dated this 30th day of January, 2024.

6

7

8

9    _____

10   Douglas L. Rayes
     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28